Albert A. Ciardi, III, Esquire
Thomas D. Bielli, Esquire
Jennifer E. Cranston, Esquire
Ciardi Ciardi & Astin
One Commerce Square
Suite 1930
Philadelphia, PA 19103
215 557 3550
215 557 3551 (fax)

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| GELT PROPERTIES, LLC, | : |
| | : BANKRUPTCY NO. 11-15826 |
| DEBTOR. | : |
| | : |

**DEBTOR'S MOTION TO PERMIT A) USE OF CASH COLLATERAL;
B) PROVIDE ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN
CASH COLLATERAL AND C) FOR AN EXPEDITED HEARING**

Gelt Properties, LLC ("Debtor" or "Gelt") by and through its proposed counsel, Ciardi Ciardi & Astin, hereby requests A) Use of Cash Collateral; B) Authority to Provide Adequate Protection to Parties with Interest in Cash Collateral; and C) an Expedited Hearing, and in support thereof and respectfully represents:

    1.  A Voluntary Petition under Chapter 11 of Title 11 of the United States Bankruptcy Code ("Code") was filed on July 26, 2011 (Filing Date").

2. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

3. Debtor is a Nevada Limited Liability Company founded by Jack Miller in 1989 as the Real Estate Owned (REO) arm of co-debtor and affiliate, Gelt Financial Corporation. Gelt Properties, LLC is a wholly owned subsidiary of Gelt Holdings, Inc. and does business in Pennsylvania, New Jersey, Delaware and Maryland and services the needs of Gelt Financial Corporation as well as third parties as a property manager.

4. In the ordinary course of co-debtor, Gelt Financial Corporation's business, it borrows money from traditional lenders and makes loans to commercial borrowers. Also, as part of its business, the co-debtor acquires and manages real estate in the real estate owned [REO] context, through the Debtor.

5. The Debtor is a party to various loan agreements with banking institutions who have placed mortgages on propeties owned by the Debtor (the "Lenders").

6. The following lenders have advanced the following sums to the Debtor:

    a. Beneficial Mutual Savings Bank, a Pennsylvania Stock bank with offices at 530 Walnut Street, Philadelphia, Pennsylvania, 19106 made the following loans to the Debtor on the following dates [in the original principal amounts] of:

        i. On March 24, 2009, Beneficial loaned $119,000 to the Debtor, pursuant to a term loan note, the performance of which was secured by a

mortgage on a property commonly known as 125 W. Rittenhouse, located in Philadelphia, Pennsylvania;

      ii.    On May 30, 2008, Beneficial loaned $176,250 to the Debtor, pursuant to a term loan note, the performance of which was secured by a mortgage on a property commonly known as 204 19th Avenue, located in Irvington, New Jersey;

      iii.    On June 30, 2008, Beneficial loaned $262,500 to the Debtor, pursuant to a term loan note, the performance of which was secured by a mortgage on a property commonly known as 909 S. 21st Street, located in Philadelphia, Pennsylvania;

      iv.    On May 30, 2008, Beneficial loaned $82,500 to the Debtor, pursuant to a term loan note, the performance of which was secured by a mortgage on a property commonly known as 1509 Airbrake Avenue, located in Turtle Creek Borough, Pennsylvania;

      v.    On September 15, 2008, Beneficial loaned $53,250 to the Debtor, pursuant to a term loan note, the performance of which was secured by a mortgage on a property commonly known as 1250 N. Newkirk Street, located in Philadelphia, Pennsylvania; and

      vi.    On September 24, 2008, Beneficial loaned $236,250 to the Debtor, pursuant to a term loan note, the performance of which was secured by a mortgage on property commonly known as 7049 Lincoln Drive, located in Philadelphia, Pennsylvania.

      b.      On or about March 25, 2010, VIST, with offices located at Sentry Parkway West, Blue Bell, PA 19422, and the Debtor entered into a Term Loan Agreement in the original principal amount of $150,000 (the "VIST Loan"). The VIST Loan is secured by a mortgage and security agreement of even date encumbering a property commonly known as 3705 Haverford Avenue, located in Philadelphia, Pennsylvania.

      c.      On or about July 29, 2009, East Coast Financial Co., with offices located at 1800 JFK Boulevard in Philadelphia, Pennsylvania, and the Debtor entered into a Term Loan Agreement in the original principal amount of $170,000, the performance of which was secured by a mortgage on a property commonly known as 4433 Sansom Street, located in Philadelphia, Pennsylvania.

    7.      With regard to those lenders and loans referenced in Paragraph 6, the Debtor, to the best of its knowledge, submits that the following amounts, as of July 25, 2011, are due and owing under the subject loan documents:

      a.      Beneficial Mutual Savings Bank: $840,442

      b.      VIST: $146,987

      c.      East Coast Financial Co. $167,999

    8.      As indicated in Paragraph 6, the Debtor owns real estate subject to mortgages with certain of the lenders referenced in Paragraph 6 which it must rent, manage, maintain and sell. A schedule of the Debtor's Real Estate Holdings is attached hereto as Exhibit "A."

    9.      Moreover and by way of further explanation of the interplay between the Debtor and co-Debtor Gelt Financial Corporation, some of the properties which the Debtor owns and

manages may have a deed recorded in the name of co-Debtor Gelt Financial Corporation. It is the Debtor's position that those properties are equitably owned by the Debtor.

10. As a result of the extended economic downturn, certain of the Debtor's tenants have been unable to make payments and are in default of their obligations to the Debtor. Consequently, the Debtor was forced to restructure its own loans with its traditional lenders.

11. The Debtor owns an entity known as Blastein Partners which it acquired after that entity defaulted on its obligations to co-Debtor Gelt Financial Corporation.

12. In anticipation of a disagreement regarding continued funding, the Debtor prepared a budget for the use of cash collateral, extending through August 31, 2011 (Exhibit "B"), which shows that, using proceeds of existing loans, the Debtor can fund operations. All such payments are reasonable and necessary to preserve and enhance the estate.

13. The continued use of cash collateral and the rollover of proceeds will allow the Debtor to continue to generate further proceeds and pay all post-petition obligations.

14. Attached hereto as Exhibit "B" is a budget regarding use of cash collateral, which includes all revenue and expenses.

15. The Budget shows that the Debtor will generate $33,000 in proceeds in August 2011.

16. The Debtor avers that adequate protection payments proposed by co-Debtor, Gelt Financial Corporation, in its August budget, together with its own protective advances to secure, maintain and insure certain of the collateral and the continued management of the Debtor's portfolio by the Debtor will serve to adequately protect the Debtor's lenders.

17. The Debtor believes that the request to use cash collateral is proper, reasonable and necessary to continue the Debtor's operations.

18. Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor and creditors of the estate.

19. The Debtor proposes to provide adequate protection in the form of continued maintenance and preservation of the collateral and adequate protection payments to each of the lenders identified in Paragraph 6.

20. In order to maintain the Debtor's operation, Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in the budget. Through the payment of the above referenced expenses, Debtor will be able, not only to maintain the status quo, but also to facilitate its reorganization and enhance the collateral.

21. Unless the Debtor can continue to operate, it will be unable to reorganize and enhance the collateral, to the detriment of its creditors.

22. Section 361 of the Bankruptcy Code sets forth three means by which adequate protection may be provided: (i) periodic payments; (ii) additional or replacement liens; and (iii) such other relief as will result in the realization of the "indubitable equivalent" of the entity's interest. See 11 U.S.C. § 361. Section 361 clearly provides a non-exhaustive list of forms of adequate protection, and the courts considering adequate protection have considered it "a concept which is to be decided flexibly on the proverbial 'case-by-case' basis." In re O'Connor, 808 F.2d 1393 (10th Cir. 1987) (citing In re Martin, 761 F.2d 472 (8th Cir. 1985)); In re Swedeland Development Group, Inc., 16 F.3d 552 (3d Cir. 1994) (discussing the "last possibility [section 361(3)] is regarded as a catch all,

allowing courts discretion in fashioning the protection provided to a secure party. Therefore, a determination of whether there is adequate protection is made on a case by case basis.")

23. The value of the lender's interest to be protected is the value of the interest on the date that the request for protection is made. In re O'Connor, 808 F.2d at 1397. In connection with the concept of adequate protection, a prepetition creditor is to be provided with the same level of protection it enjoyed pre-petition since it is entitled to retain the benefit of its pre-bankruptcy bargain. In re Swedeland, 16 F.3d 552 (3d Cir. 1994). However, "[t]here may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest." In re Briggs Transportation Company, 780 F.2d 1339 (8th Cir. 1986) (citing to the legislative history of section 361). "It is expected that the courts will apply the concept in light of facts of each case and general equitable principles." Id.

24. Here the Debtor is providing adequate protection in the form of adequate protection payments, protective advances to secure, maintain and insure certain of the collateral and the continued management of the Debtor's portfolio by the Debtor.

25. As set forth above, the examples of adequate protection set forth in section 361 of the Bankruptcy Code are not an exhaustive list. See supra. In the case In re Hinchcliffe, 164 B.R. 45 (Bankr. E.D. Pa. 1994), in examining the concept of adequate protection in connection with a motion for relief from stay, the District Court discussed the various forms of adequate protection that a debtor can provide, including an equity cushion, cash payments of interest, or additional replacement liens. The District goes on to state that "while the list of adequate protection examples is not exhaustive, in the proper case, a debtor could rely upon his arguably high prospects for a

successful reorganization to support his claim that protection exists." Id. at 49 (citing In re Roane, 14 B.R. 542, 544-46 (E.D. Pa. 1981)). The Debtor posits that the prospects for reorganization are high, thus demonstrating an additional form of adequate protection to the lenders.

26. In this case there will be no post-petition diminution in value of the lenders' collateral. In fact, quite the opposite will occur.

### REQUEST FOR EXPEDITED CONSIDERATION

27. The Debtor projects revenue of $33,000 in August.

28. The Debtor submits it is in the best interest of all interested parties as well as the estate to have a hearing on the Debtor's Motion as quickly as the Court's calendar permits but in all cases on August 9, 2011 together with the Second Interim Hearing on co-Debtor, Gelt Financial Corporation's, Motion for Authority to use Cash Collateral.

29. As of the filing of this motion, no trustee, examiner or creditor's committee has been appointed in these Chapter 11 cases. Notice of this motion will be been given via facsimile, electronic mail and/or regular mail, or to the United States Trustee, the Top 20 Unsecured Creditors and the Debtor's Secured Creditors upon Debtor's receipt of the signed Order scheduling the requested expedited hearing. The Debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estates and all parties in interest that would ensue if the relief requested herein is not granted.

30. No previous request for the relief sought herein has been made to this or any other Court. Prior to filing this Motion, counsel for the Debtor contacted known counsel for the lenders and the U.S. Trustee to advise of the Debtor's request for the scheduling of an expedited hearing within ten (10) days, subject to their respective rights to contest the relief sought therein.

WHEREFORE, the Debtor requests that this Court enters an Order in the form attached hereto and for such other and further relief as this Court deems just.

Respectfully submitted,

CIARDI CIARDI & ASTIN

Date:                                        By:    /s/ Jennifer E. Cranston
                                                    Albert A. Ciardi, III, Esquire
                                                    Thomas D. Bielli, Esquires
                                                    Jennifer E. Cranston, Esquire
                                                    One Commerce Square, Suite 1930
                                                    2005 Market Street
                                                    Philadelphia, PA 19103

                                                    Proposed Attorneys for the Debtor